J-S69037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.M.T., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 949 MDA 2018 |

Appeal from the Order Entered May 16, 2018
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s):  001-Adopt-2018,
CP-21-DP-0000075-2017

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.M.T., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | No. 966 MDA 2018 |

Appeal from the Decree May 16, 2018
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  001-Adopt-2018

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 16, 2018**

A.M.T. (Mother) appeals from the order which changed the permanency

goal of A.L. (Child) (born July 2016) to adoption, pursuant to the Juvenile Act,

42 Pa.C.S.A. § 6351, and the decree involuntarily terminating her parental

rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b) of the Adoption

Act.[1]  Additionally, Mother's counsel, R.H. Hawn, Jr., Esquire, seeks to withdraw his representation of Mother pursuant to ***Anders v. California***, 87 S. Ct. 1936 (1967), ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and ***In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending ***Anders*** briefing criteria to appeals by indigent parents represented by court-appointed counsel in involuntary termination matters).  After careful review, we affirm and grant counsel's petition to withdraw.

We summarize the following facts from the orphans' court opinion, and from the record.  ***See*** Orphans' Court Opinion, 8/14/18, at 1-3; ***see also*** N.T., 5/16/18, at 1-44.  The family has a long involvement with the Cumberland County Children and Youth Services (CYS or Agency).  Prior to her involvement with Father, Mother had three children with other men.  In 2013, Mother was driving under the influence of cocaine when she had an accident with the three children in the car.  Since that time, the older children have resided with their respective fathers, and Mother voluntarily relinquished her parental rights to them.  Mother and Father have a total of five children together, three older than Child and one younger than Child.  The three older children were previously placed and adopted.[2]

---

[1] The court terminated the parental rights of G.L. (Father) pursuant to Section 2511(a)(1), (2), (5), and (b).  Father did not separately appeal and is not a party to the instant appeal.

[2] Parents' parental rights to G.L., Jr., were terminated some time in 2012, their parental rights to C.L. were terminated in October 2014, and their

- 2 -

In December 2016, Mother completed a Functional Assessment Screening Tool (FAST) evaluation. Three months of supervision was recommended to allow Mother to demonstrate she could follow through with medication management, counseling, stable housing, avoid domestic violence and police involvement, maintain negative drug screens, and set up and follow through with medical appointments for Child (including a hip specialist).

In June 2017, CYS filed a shelter care application. The application alleged that Mother and Father had issues with domestic violence, drug abuse, mental health, and a lack of stable housing. Child had not been taken to his nine-month checkup. Additionally, CYS had received a referral indicating that Mother and Father were living with Child in a tent in a state park. Child was removed from the parents and placed in non-kinship foster care.

The Agency filed a dependency petition, and on July 7, 2017, Child was adjudicated dependent. At that time, Mother's goals were identified as: get out of jail; obtain a drug and alcohol evaluation and follow through with any recommended treatment; obtain a mental health evaluation; complete parenting classes; and break the cycle of domestic violence. In September 2017, Mother did not appear for a judicial conference, but the court found she was making substantial progress, had obtained a drug and alcohol evaluation, a FAST evaluation, and a mental health evaluation.

---

parental rights to J.L. were terminated in November 2014. It appears that these terminations were voluntary. Child's youngest sibling, V.L., was placed at birth with the same foster parents as Child.

However, during a permanency review hearing in December 2017, Mother was found to be in minimal compliance, and had not made progress toward achieving independent, appropriate housing. As a result, she was discharged from Alternative Behavioral Consultants (ABC). Her visits with Child were inconsistent, and since August 2017, she had not pursued domestic violence counseling services, nor had she received mental health counseling since October 2017. Also, Mother stopped appearing for drug screens in October 2017, and did not follow recommendations to pursue outpatient drug and alcohol counseling. Further, Mother was charged with new crimes.[3]

In January 2018, CYS filed a petition requesting that Child's goal be changed to adoption, and a petition requesting that the court involuntarily terminate Mother's and Father's parental rights pursuant to Section 2511(a)(1), (2), (5), and (8).

In March 2018, Mother tested positive for methylenedioxy-methamphetamine (MDMA, more commonly known as ecstasy), and later in the month, attempted to falsify her urine sample. After giving a true screen sample, she tested positive for cocaine and fentanyl. In April 2018, Child's younger sibling V.L. was born, and Mother and V.L. tested positive for cocaine and marijuana at V.L.'s birth. Mother was then incarcerated for approximately

_____

[3] On October 5, 2017, Mother was charged with theft and receiving stolen property. On October 24, 2017, Mother was charged with four counts of harassment. On December 7, 2017, Mother was charged with criminal trespass and disorderly conduct. *See* Permanency Review Order, 12/20/17, at 1-2.

three months. At the time, she was unsuccessfully discharged from her drug treatment program, and had not obtained mental health services.

On May 16, 2018, the court convened a hearing on the combined goal change and termination petitions. CYS presented the testimony of Shelly Barrick, CYS caseworker, and T.R., Child's foster mother. Mother, represented by counsel, testified on her own behalf. Father, represented by counsel, did not appear at the hearing. Child was represented by the Children's Advocacy Clinic as guardian *ad litem* and legal counsel.[4]

Ms. Barrick testified that Child is doing well in foster care with his younger sister V.L., and is very bonded to his foster parents. **See** N.T., 5/16/18, at 12-13. T.R. testified that Child is doing well in her home, and that she and her wife, P.E.-R., wish to adopt Child. **Id.** at 16. He is very bonded with both foster mothers. **Id.** at 17. T.R. described one visit with Mother in prison where Child seemed happy to see Mother, but another visit where Child clung to foster mother and refused to let go. **Id.** at 18. Mother visited Child four times in 2018. **Id.** at 20. Foster mothers are open to Mother having post-adoption contact with Child. **Id.** at 21.

---

[4] Lucy Johnston-Walsh, Esquire, appeared for the Children's Advocacy Clinic. **See** N.T., 5/16/18, at 1. This representation satisfied the representation requirements of **In re Adoption of L.B.M.**, 161 A.3d 172, 183 (Pa. 2017) (plurality) and **In re T.S.**, 192 A.3d 1080, 1092-93 (Pa. 2018). Here, counsel noted on the record that Child was non-verbal due to his young age, but that he appeared happy in his placement. **See** N.T., 5/16/18, at 39; **see also T.S.**, **supra** (noting that there is no conflict between child's best and legal interests if child is non-verbal due to young age).

Mother testified that she is on the housing authority's list for Section 8 housing, and that her name is near the top of the list. *Id.* at 25. She averred that she had taken parenting classes, but services were discontinued until she could find housing. *Id.* at 26-27. Mother continued visitation with Child while incarcerated; she averred that Child, who calls her "mom mom," recognizes and loves her. *Id.* at 29-30, 36-37. Mother denied testing positive for drugs at V.L.'s birth. *Id.* at 30-31. She testified that she was attending Narcotics Anonymous and Alcoholics Anonymous meetings while in the prison, receiving dialectical behavior therapy, and attending domestic violence counseling. *Id.* at 30-34. Mother stated she had not seen Father for close to three months and that she was no longer in a relationship with him. *Id.* at 32-33.

Child's counsel noted that Child was too young to verbalize his desires but that, after observation, counsel concluded that Child was happy and well-adjusted with foster family. *Id.* at 39. At the conclusion of the hearing, the court changed Child's permanency goal to adoption, and terminated Mother's parental rights. *Id.* at 43-44.

Mother appealed and filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In this Court, Mother's counsel has filed an *Anders* brief, asserting two issues that Mother might seek to raise:

> 1. Did the [orphans'] court abuse its discretion and commit an error of law when it found, despite a lack of clear and convincing evidence, that the child's permanent placement goal of reunification [was] neither appropriate, nor feasible and ordered

a goal change to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S. § 6351(f)?

2. Did the [orphans'] court abuse its discretion and commit an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Mother's] parental rights [to] her child, and when it failed to primarily consider the child's developmental, physical, and emotional needs and welfare, thus contravening sections 2511(a) and 2511(b) of the Adoption Act, 23 Pa.C.S. §§ 2511(a) and 2511(b)?

***Anders*** Brief at 4 (suggested answers omitted).[5]

When faced with a purported ***Anders*** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under ***Anders***, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in ***Santiago***, namely:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

---

[5] Mother has not *pro se* filed a response to the ***Anders*** brief or retained new counsel.

> Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, only then may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Attorney Hawn's *Anders* brief complies with these requirements. He includes a summary of the relevant factual and procedural history; he refers to the portions of the record that could arguably support Mother's claim; and he sets forth a conclusion that the appeal is frivolous and no other issues could be raised. He explains his reasoning and supports his rationale with citations to the record and pertinent legal authority. Additionally, Attorney Hawn has supplied Mother with a copy of the *Anders* brief and letter explaining the rights enumerated in *Nischan*, *supra*. Thus, counsel has complied with the technical requirements for withdrawal. We now independently review the record to determine if the issues raised are frivolous and to ascertain whether there are non-frivolous issues Mother may pursue on appeal.

We review cases involving the termination of parental rights according to the following:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

> Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). As CYF argues that it proved by clear and convincing evidence that grounds for termination existed under 23 Pa.C.S.A. § 2511(a)(2), we focus our analysis on subsection (a)(2) and (b).

The relevant subsections of 23 Pa.C.S. § 2511 provide:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of § 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **See In Interest of Lilley**, 719 A.2d 327, 330 (Pa. Super. 1998).  The grounds for termination are not limited to affirmative misconduct, but concern parental

incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

Here, Mother contends that there was insufficient evidence to support the termination of her parental rights because she was in compliance with and making progress towards her objectives, and the court failed to assess her progress in light of what would be expected of a similarly situated adult. *See Anders* Brief at 14. Mother claims that she only needed a few months to complete her prison sentence, return to the community, and resume parenting responsibilities, and that she had maintained sobriety and attended substance abuse intervention programs while incarcerated. *Id.* at 14-15.

In the instant case, the orphans' court explained:

We made it clear to Mother what she needed to do to reunify with [Child] when we met with her in July, 2017. As stated at the conclusion of the adjudication hearing,

> "[I]t is clear to this [c]ourt that the root of dependency here is, among other things, but most importantly, the history of domestic violence in the household. The domestic violence leads to the instability that has plagued the parents throughout their lengthy involvement with Children and Youth. Mother has indicated that she is committed to reunification with [Child]. We have indicated to her that we hope that will be accomplished, but in order to do so, she must . . . obtain a drug and alcohol evaluation and follow through . . . obtain a mental health evaluation . . . and [] most importantly, break the cycle of domestic violence between her and her paramour and Father of [Child]."

She did none of those things.

- 11 -

Mother was offered numerous services to assist her in doing what she needed to do to resume her parenting of her child. Instead of taking advantage of those services, she continued to abuse drugs and stayed in her toxic relationship with her abuser. In addition, her contact with [Child] became increasingly sporadic until her re-incarceration in April of this year.

The above facts yield the hallmarks of someone who refuses to carry out her parental duties or is incapable of remedying the cause of her incapacity with the resources at her disposal. She has not put any investment into her addiction treatment, mental health services, domestic violence services, or her child. Mother has long refused to put her child (in fact, children) before drugs and her abusive paramour. Her addiction is the source of her past and present parental incapacity, and her current instability is a foreseeable consequence of her inability to lead a life free from illegal drugs and her toxic relationship with Father. Thus, Mother's issues continued to impact [Child] and precluded her from providing essential parental care, control or subsistence necessary for his physical or mental well-being. Whether Mother's failure to provide parental care is the result of true incapacity or is simply her refusal, differentiating is not important; the result is the same—the Child is without essential parental care.

Trial Court Opinion, 8/16/18, at 4-6. Upon review, we discern no error in this analysis and, accordingly, agree with the orphans' court that CYS proved by clear and convincing evidence that Mother evinced parental incapacity, the causes of which could not be remedied. *Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Accordingly, we consider next whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use

expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.* Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *In re: K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

We have noted:

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)).

The orphans' court observed:

> We found little to no evidence that severing the ties between Mother and [Child] would have any detrimental effect on [Child]. Furthermore, we are satisfied that if there would be any adverse effect, it could be easily overcome by the love and support of his foster family. [Child] is thriving in the foster home. He is an integral part of the foster family. They love him and want to adopt him. With his foster family he has stability, and most importantly, permanency. Consequently, we are satisfied that the needs and welfare of [Child] would be best served by terminating parental rights and allowing him to be adopted by his foster parents.

Trial Court Opinion, 8/16/18, at 6. Again, we agree with the orphans' court; although there was some testimony that Child recognizes Mother, and despite

Mother's testimony that Child loves her, we are mindful that "a child's life cannot be held in abeyance." *See In re R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Accordingly, we conclude that clear and convincing evidence of record supports the termination of Mother's parental rights under Section 2511(a)(2), and Section 2511(b), where termination would best serve Child's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27.

Mother additionally challenges the goal change to adoption, pursuant to the Juvenile Act, 42 Pa.C.S. § 6351, and contends that the court did not give appropriate weight to Mother's recent compliance with her objectives and did not properly weigh the evidence of her progress towards alleviating the circumstances underlying Child's dependency. *Anders* Brief at 12.

With regard to dependency cases:

> [t]he standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015). Thus, we employ an abuse of discretion standard. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

Regarding the disposition of dependent children, the Juvenile Act, 42 Pa.C.S. §§ 6351(e)-(g), provides the criteria for a permanency plan. The court must determine a disposition best suited to the safety and protection,

as well as the physical, mental, and moral welfare of the child. ***See*** 42 Pa.C.S. § 6351(g). With a goal change petition, the trial court:

> considers the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

***In Interest of A.N.P.***, 155 A.3d 55, 67 (Pa. Super. 2017) (quoting ***In re A.K.***, 936 A.2d 528, 533 (Pa. Super. 2007).

> We have further noted:

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."

***In re K.C.***, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citations omitted).

As noted above, the orphans' court determined that Child's needs and welfare would be best served by adoption. Additionally, although Mother had made some progress while incarcerated, she had not shown any progress while not incarcerated. Essentially, Mother's argument requests that we – impermissibly – re-weigh the orphans' court's findings and conclusions. ***N.A.***, 116 A.3d at 1148.

Thus, we find no error of law or abuse of discretion in the orphans'
court's finding that Mother failed to make appropriate progress to alleviate the
circumstances necessitating placement; finding that it was in the best
interests of Child to be adopted; and changing Child's permanency goal to
adoption. *N.A.*, 116 A.3d at 1148; *A.N.P.*, 155 A.3d at 67; *K.C.*, 903 A.2d at
14-15.

In sum, we agree with Attorney Hawn that Mother's issues are frivolous.
We have independently reviewed the record and find no other issues of
arguable merit that he or Mother could pursue on appeal. Accordingly, we
grant counsel's petition to withdraw and conclude that clear and convincing
evidence of record supports the termination of Mother's parental rights under
Sections 2511(a)(2) as well as the Section 2511(b) findings that severing the
bond between Mother and Child would not cause harm to Child; that adoption
would best serve Child's needs and welfare; and that Child's permanency goal
should be changed to adoption. *See Z.P.*, 994 A.2d at 1126-27.

Order affirmed. Decree affirmed. Petition to withdraw granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/16/2018

- 16 -