J-S06029-15

2015 PA Super 118

| IN THE INTEREST OF: N.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: DEPARTMENT OF HUMAN SERVICES (DHS) | |
| | No. 2440 EDA 2014 |

Appeal from the Order Entered July 24, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): FID#51-FN-004497-2013
No. CP-51-DP-0002333-2013

\*\*\*\*\*

| IN THE INTEREST OF: M.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: DEPARTMENT OF HUMAN SERVICES (DHS) | |
| | No. 2599 EDA 2014 |

Appeal from the Order Entered July 24, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): FID#51-FN-004497-2013
No. CP-51-DP-0002330-2013

BEFORE: BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

OPINION BY LAZARUS, J.: **FILED MAY 13, 2015**

The Department of Human Services of the City of Philadelphia ("DHS")

appeals the trial court's determination that minors M.A. and N.A. did not

---

[*] Former Justice specially assigned to the Superior Court.

meet the definition of dependent children. The trial court described the

procedural history of this matter as follows:

On November 11, 2013, DHS received a General Protective Services ("GPS") Report alleging that a neighbor observed M.A. and N.A. at the family's home without adult supervision. The Report further stated that police responded to the home, transported M.A. and N.A. to DHS and Mother was contacted to retrieve the children. Mother retrieved M.A. and N.A. later that day.

On November 20, 2013, DHS filed Dependency Petitions for M.A. and N.A. At the Adjudicatory Hearing on December 4, 2013 held before this Court, Adjudication was deferred. This Court also ordered that IHPS continue and DHS supervise the family.

At the Adjudicatory Hearing on March 5, 2014, held before this Court, Adjudication was deferred. This Court ordered DHS supervision to stand and N.A. to be referred to the Behavior Health System ("BHS") for Therapeutic Staff Support ("TSS") services. This Court also noted that M.A. was residing [with] L.P. (Maternal Grandmother), and N.A. was residing with his father, N.T., through family arrangements.

At the Adjudicatory Hearing on April 9, 2014, held before Master William Rice, the Court recommended:

AND NOW, this 9th day of April 2014, after consideration of the motion presented by the petitioner the Court finds that clear and convincing evidence does not exist to substantiate the allegations set forth in the petition. Furthermore it is ORDERED that the child is found not to be a Dependent Child pursuant to the Pennsylvania Juvenile Act and that the petition for dependency is dismissed. Any temporary legal and physical custody by the Philadelphia Department of Human Services of the aforementioned child shall be discharged.

Child to remain with Maternal Grandmother until the end of 2013-2014 school year. Child to be reunified with mother at the end of the 2013-2014 school year. Mother's visits

are to continue until reunification occurs. Petition is discharged.

The April 9, 2014 recommendation was adopted and ordered by this Court. DHS did not appeal the April 9, 2014 Order.

On April 14, 2014, DHS received a GPS Report stating that M.A. was sexually abused by her babysitter's 13 year old son approximately two years ago. The sexual abuse allegations were not addressed at the Adjudicatory Hearing on April 9, 2014. The Report further stated: M.A. was in the care of the babysitter at the time of the incident; the sexual abuse occurred on two separate occasions; M.A. was eight years old at the time of the incident; and M.A. was residing in the legal custody of Mother during the time of the incidents. The Report also provided that M.A. was afraid to tell anyone about the sexual abuse and was receiving services through Philadelphia Children's Alliance ("PCA"). However, DHS did not file an Emergency Petition based upon these allegations.

In May 2014, N.A. and M.A. were not returned to Mother's home pursuant to the April 9, 2014 Court Order, which follows,

Child to remain with Maternal Grandmother until the end of the 2013-2014 school year. Child to be reunified with mother at the end of the 2013-2014 school year.

According to DHS, Mother was working two jobs, and unable to identify any resources who could supervise the children during work.

On June 13, 2014, N.A. began residing at Maternal Grandmother's house as well. Both children continued to remain in Maternal Grandmother's care contrary to this Court's April 9, 2014 Order directing the children to be reunified with Mother at the end of the 2013-2014 academic school year.

On June 20, 2014, DHS learned from the Wedge Medical Center that N.A., while under the care of Maternal Grandmother, had not been receiving his weekly therapy and medication management since April 30, 2014.

On June 30, 2014, over two months after the first Dependency Petition was dismissed, DHS filed a second Dependency Petition attempting to reargue issues previously

heard before this Court at the Adjudicatory Hearing on April 9, 2014.

On July 24, 2014, an Adjudicatory Hearing was held before this Court and this Court found again that no Dependency issues were present. Based upon the findings, this Court Ordered both children to be reunified with Mother as previously ordered at the Adjudicatory Hearing on April 9, 2014 and dismissed the second Dependency Petition. This Court also found the testimony of the DHS worker not credible. Thereafter, DHS filed a timely Appeal on August 25, 2014.

Trial Court Opinion, 10/6/2014 at 3-6 (internal citations omitted).

On appeal, DHS raises the following issues:

1. Did the trial court err, as a matter of law, where it denied the Philadelphia Department of Human Services' request to present the entirety of its evidence that M.A. and N.A. met the definition of dependent children?

2. Did the trial court err, as a matter of law, in holding that the doctrine of res judicata prevented DHS from presenting any evidence of events prior to April 9, 2014, to support its claim that M.A. and N.A. met the definition of dependent children?

Appellant's Brief, at 6.

DHS' argument is twofold. First, DHS argues that the court, in a dependency determination, is mandated to engage in a sweeping inquiry. Appellant's Brief, at 15. DHS posits, then, that in applying res judicata, and limiting the facts considered at the July 24, 2014 dependency determination,

the trial court erred and did not engage in a thorough inquiry.[1]  Appellant's

Brief, at 15-16.  We are not persuaded by this argument.

In evaluating dependency rulings, this Court has held,

> The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.  ***In Re R.R.***, 455 Pa. Super. 1, 686 A.2d 1316, 1317 (1996) (citations omitted).

***In the Matter of C.R.S.***, 696 A.2d 840, 843 (Pa. Super. 1997).

Further, it is well settled that the doctrine of res judicata applies to

prevent litigants from bearing the burden of re-litigating the same issues

with the same parties, and to promote judicial economy.  ***Philip v. Clark***,

560 A.2d 777, 780 (Pa. Super. 1989).  For res judicata to apply, the

following elements must be concurrent across both actions: (1) the identity

of the thing sued upon; (2) the identity of the cause of action; (3) the

---

[1] Mother claims DHS waived its challenge to the court's application of res judicata to the extent that the court based its decision upon actions and events existing subsequent the court's prior discharge of DHS's petition for delinquency. We do not find waiver here.  First, the court made it clear it was not re-opening the prior delinquency matter and it would base its decision on the current petition.  DHS stated it was raising the prior matter simply to "provide a history."  N.T. Dependency Hearing, 7/24/14, at 7. Further, DHS raised the res judicata issue in its Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal.  ***See*** Pa.R.A.P. 1925(b) Statement, 8/5/14, ¶ 2.  Despite the fact that we do not find waiver, we also find the doctrine inapplicable.  ***See infra***.

identity of persons and parties to the action; and (4) the identity of the quality or capacity of the parties suing or being sued. ***Callery v. Mun. Auth***., 243 A.2d 385, 387 (Pa. 1968). The dominant inquiry under those elements, then, is whether the controlling issues have been decided in a prior action, in which the parties had a full opportunity to assert their rights. ***Id***.

We conclude the doctrine of res judicata is not applicable in the instant matter.[2] The Commonwealth Court of Pennsylvania has previously explained,

> Res judicata encompasses two related yet distinct principles: technical res judicata and collateral estoppel. Technical res

---

[2] We agree with Mother that DHS' reliance on ***In the Interest of DelSignore***, 375 A.2d 803 (Pa. Super. 1977), is misplaced. There, a juvenile defendant faced a delinquency and deprivation hearing in February of 1975, at which she was adjudicated not delinquent. Thereafter, in September of 1975, the defendant faced another delinquency hearing. At the September hearing defendant argued that the court's prior findings should estop a delinquency adjudication at the present hearing. Defendant's motion to dismiss the petition based on res judicata was denied. On appeal, this Court affirmed, concluding res judicata did not apply. We stated: "[T]he present petition and hearing were based on acts committed after the first adjudication. Therefore, at least two of four factors requisite to the application of the doctrine of res judicata are lacking: identity of the thing sued upon, and identity of the cause of action." ***DelSignore***, 375 A.2d at 808. This Court's reasoning in ***DelSignore*** is premised on the understanding that at the second hearing the court relied on only the record of events after the first hearing. We distinguish the instant case, therefore, as, under DHS' theory, there would be no divide between the body of evidence presented at the April hearing and the July hearing. As such, the same reasoning, which determined that the separate hearings in ***DelSignore*** could not constitute the same matter for res judicata purposes, cannot apply in this case.

judicata provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded.

*J.S. v. Bethlehem Area Sch. Dist*., 794 A.2d 936, 939 (Pa. Cmwlth. 2002) (citations omitted). Considering the procedural posture of this case, we conclude that neither principle applies.

Technical res judicata does not apply, as the two causes of action, the first determination and the second determination, are not the same. It is well settled that the proper inquiry in a dependency adjudication follows a bifurcated analysis: "Is the child *at this moment* without proper parental care or control?; and if so, is such care or control *immediately* available?" *In the Interest of La Rue*, 366 A.2d 1271, 1278 (Pa. Super. 1976) (emphasis added). Because the element of time is integral to the dependency adjudication, each petition in this instance necessarily implicates a different cause of action. Thus, technical res judicata cannot apply.

Furthermore, collateral estoppel does not apply. The window between the first and second hearing offers a new body of facts to consider, and, as such, changes the issues surrounding the dependency adjudication. Therefore, the principles of collateral estoppel are not in play. *See J.S.*, *supra*.

Although the lower court mistakenly invoked the doctrine of res judicata, its reasoning was sound. A dependency adjudication requires an inquiry into the circumstances in which the petition is filed, specifically, whether proper care or control is available in that moment. *Id.* It was

proper, therefore, for the lower court to consider only the interim record, as those facts were controlling as to the issue of dependency. "The fact that a child lacked proper parental care in the past is not sufficient to show dependency[.]" West's Pennsylvania Family Law Practice and Procedure § 30:5; *In re D.A.*, 801 A.2d 614 (Pa. Super. 2002); *see also In Interest of Hall*, 703 A.2d 717 (Pa. Super. 1997) (fact that child born to minor who herself is adjudicated dependent insufficient to support finding of dependency, particularly in absence of evidence that proper care not immediately available from father).

At both the April and July hearings, the court considered the same issue: "whether or not the children are dependent and whether or not the mother cannot provide the necessary care and control of the children." N.T. Hearing, 7/24/14, at 14-15. Indeed, upon review of the record, we take note that DHS' original petitions and second petitions present virtually the same facts to support a finding of dependency.[3] What new facts were

_____

[3] The only different facts alleged are:

> n. On April 14, 2014, DHS received a General report which stated that M.A. was sexually abused by her babysitter's 13-year-old son approximately two years ago; that [M.A.] was in the care of the babysitter at the time of this incident; that the sexual abuse occurred on two separate occasions; that [M.A.] was eight years old at the time of the incident; and that [M.A.] was residing [in] the legal custody of [Mother] during the time of the incidents. It was also reported that [M.A.] was afraid to tell

*(Footnote Continued Next Page)*

presented in the second petition were considered by the trial court. DHS fails to articulate how or why the consideration of facts prior to the April hearing would have influenced the court's decision in July.

As this Court has explained, "the inquiry must simply be comprehensive enough to establish by clear and convincing evidence that proper care and control of the children is not immediately available." *In re M.W.*, 842 A.2d 425, 431 (Pa. Super. 2004). The lower court's extensive

*(Footnote Continued)* ——————

anyone about the sexual abuse and that she received services through Philadelphia Children's Alliance.

o. In May 2014, DHS learned that [Mother] was working two jobs and that she was unable to identify any resources that would supervise the children while she worked. Additionally, DHS learned that when the children visited with [Mother] during the weekends, she did not ensure that they had adequate supervision while she worked.

p. On June 13, 2014, [Father] transported [N.A.] to the home of [Grandmother], who agreed that [N.A.] would reside with her during the summer months. [M.A.] also remained in [Grandmother's] care.

q. On June 20, 2014, DHS telephoned The Wedge Medical Center and learned that [N.A.] had not received his weekly therapy and medication management since April 30, 2014.

r. [N.A.] is diagnosed with severe attention deficit hyperactivity disorder.

s. [Mother] has a history of not ensuring that her children are appropriately supervised.

* * * *

u. [Father] is involved in [N.A.]'s care.

*See* Petition of 6/30/2014.

review of the record demonstrates that Mother was willing to provide proper care and control immediately, and had attempted to remedy any lapses in care. We find no abuse of discretion.

Further, we conclude that DHS simply failed to meet its burden in proving the dependency of the children. The fact that the court chose to consider only those facts that emerged subsequent to the prior determination does not bring res judicata principles into play. We conclude, therefore, that the trial court's inquiry at the July 24, 2014 was sufficient, and we find no error. **In re C.R.S.**, **supra**.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2015