J-S58030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.C.-P., A | : | IN THE SUPERIOR COURT OF |
| MINOR ADJUDICATED CHILD | : | PENNSYLVANIA |
| APPEAL OF R.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 864 WDA 2018 |

Appeal from the Order May 25, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
33 of 2017

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 16, 2018**

R.P. (Father) appeals from the order which changed the permanency goal of M.C.P. (Child) (born October 2016) to adoption, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  After careful review, we affirm.

The following facts are recited in the trial court opinion, and supported by the record.  **See** Trial Court Opinion, 7/19/18, at 1-5.  In February 2017, when Child was approximately four months old, the Erie County Office of Children and Youth (CYF) filed an application for emergency protective custody following allegations that both parents had been arrested on January 25, 2017, and were incarcerated.  While parents had made arrangements for a

_____

[1] N.I. (Mother) appealed from the goal change on June 29, 2018.  Her appeal, docketed in this Court at 969 WDA 2018, was dismissed on August 27, 2018, due to Mother's failure to comply with Pa.R.A.P. 3517 (providing that appellant's failure to complete and return a docketing statement within ten days may result in dismissal of the appeal).

family friend to care for Child, the friend could no longer care for Child due to medical issues. At the time she was taken into care, Child was behind on her immunizations.

CYF filed a shelter care application and a dependency petition. On February 10, 2017, the court issued a shelter care order. On February 14, 2017, following a hearing, the court adjudicated Child dependent. Father did not attend the hearing because he was still incarcerated.

In May 2017, the court held a permanency review hearing; Child's placement in foster care was continued. Father was ordered to complete drug and alcohol treatment and parenting plans following his release from prison, as well as participate in a mental health assessment and follow any recommendations from that assessment, maintain housing, and maintain gainful employment or adequate income. Father was released from prison in June 2017.

In November 2017, the court convened a permanency review hearing and found that Father was minimally compliant with the court's directives. Father had cancelled seven of 23 visits with Child, did not interact with her during visits, and refused additional visits. His unsupervised visits were changed to supervised visits due to his agitated behavior. He was uncooperative and combative with agency personnel. He had not attended parenting classes. He denied drug and alcohol problems during his assessment, so no further treatment was recommended. He cooperated with his probation officer but claimed to have "side jobs" that could not be verified.

He lived with friends and had no fixed address. At the conclusion of the hearing, the court ordered Father to participate in parenting programs and follow parenting directives, visit with Child, participate in a psychological evaluation and follow recommendations, continue to comply with his probation conditions, and obtain stable housing and employment.

On April 12, 2018, CYF filed a petition seeking to change Child's permanency goal to adoption. On May 23, 2018, the court convened a hearing on the goal change petition. Father, represented by counsel, testified on his own behalf. CYF presented the testimony of Michelle Rash, the caseworker assigned to Father. Child, not in attendance, was represented by Catherine Allgeier, Esquire, as guardian *ad litem*.[2]

At the time of the hearing, Father's compliance remained minimal; he had attended five of 12 required parenting classes as of May 9, 2018, although he claimed to have attended nine. Father continued to cancel visitations due to what he described as paralysis of his back. When it came time for visitations, Child would become hysterical upon seeing the aide who was to

---

[2] We briefly address the representation of counsel. *See In re: K.J.H.*, 180 A.3d 411, 412-414 (Pa. Super. 2018). This Court has extended *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (plurality) (interpreting the requirement of the appointment of counsel to represent a child's legal interests in termination proceedings) to dependency proceedings. *See In re J'K.M.*, --- A.3d ---, 2018 Pa. Super. 182 (filed June 26, 2018). However, a GAL may serve as counsel where there is no conflict between a child's legal and best interests where the child is too young to express a preference. *See In re T.S.*, --- A.3d ---, 2018 WL 4001825 *10 (filed August 22, 2018). In this case, Child, who was approximately one year and seven months old at the time of the hearing, was too young to express her preferences and accordingly, we need not remand for further proceedings. *Id.*

take her to the visit, cried throughout the car ride, and remained standoffish with Father. Of 21 possible visits, Father attended four full two hour visits, three visits for one hour, and one visit for under an hour.

Dr. Peter von Korff performed a full psychological evaluation of Father, and concluded that: (1) Father would have a difficult time establishing a stable future relationship with Child; (2) Father required counseling and ongoing mental health treatment; and (3) Father lacked awareness of his mental health needs, such that it would be difficult for him to participate in treatment. Finally, Father had not obtained proof of appropriate housing, but averred that a lease document was being mailed to him. Father did not provide proof of income beyond his social security disability monthly payment of $700.00.

At the conclusion of the hearing, the court found that CYF had met its burden by clear and convincing evidence, and changed Child's goal to adoption. Father timely filed a notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and Pa.R.A.P. 1925(b).

On appeal, he raises the following questions for our review:

1. Whether the trial court committed an abuse of discretion and/or error of law when it made the findings/conclusions that there had been minimal compliance with the permanency plan as Father had completed all but [three] of the parenting classes?

2. Whether the trial court committed an abuse of discretion and/or error of law by failing to recognize that [Father] did participate in a psychological evaluation with Dr. Vonkorff [*sic*][?]

3. Whether the trial court committed an abuse of discretion and/or error of law by failing to acknowledge that Father did follow the rules and regulations of Erie County Adult Probation[?]

4. Whether the trial court committed an abuse of discretion and/or error of law by finding Father did not have stable housing[?]

Father's Brief at 3 (unnecessary capitalization and trial court answers omitted).

With regard to dependency cases:

[t]he standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015). Thus, we employ an abuse of discretion standard. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

As to the disposition of dependent children, the Juvenile Act, 42 Pa.C.S.A. §§ 6351(e)-(g), provides the criteria for a permanency plan. The court must determine a disposition best suited to the safety and protection, as well as the physical, mental, and moral welfare of the child. *See* 42 Pa.C.S.A. § 6351(g). With a goal change petition, the trial court:

considers the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In Interest of A.N.P.*, 155 A.3d 55, 67 (Pa. Super. 2017) (quoting *In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

We have further explained:

[w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.SA. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citations omitted).

Here, Father generally contends that he did not have the ability to begin working on his treatment plans and goals until July 2017, after his release from prison, and was not given adequate time to re-acclimate to society. *See* Father's Brief at 8. He avers he should have been allowed more time to see whether the services necessary to complete reunification could be completed "within the time frame," despite the fact that Child had already been in foster care for fifteen months. *Id.*

Father first argues that the court erred in finding that he had only minimally complied with the permanency plan. Father's Brief at 7-9. Father claims he completed all but three of his parenting classes. *Id.*

However, the trial court observed:

[Father] testified that he had completed nine (9) parenting classes and was going to the tenth the day after, May 23, 2018. These

- 6 -

> classes were on a weekly basis (one per week). As of May 9, 2018, [Father] had completed five (5) classes. There were 2 weeks between May 9 and May 23. The fact is that the classes, being weekly, would only allow for the father to have completed seven (7) by May 23, 2018. Further, and of significance, no documentation was provided to the [c]ourt to substantiate the father's claim.

Trial Court Opinion, 7/19/18, at 8 (citations to the record omitted). The trial court found Father's contention that he had completed nine parenting classes to not be credible, and concluded that Father had failed to attend and successfully complete parenting classes that were ordered for him more than a year prior to the hearing. Accordingly, because the trial court's finding that Father was not compliant with his parenting plan was supported by competent evidence of record, we find no abuse of discretion. **N.A.**, 116 A.3d at 1148.

Second, Father contends that the trial court committed an abuse of discretion and/or an error of law by failing to recognize that Father had participated in a psychological evaluation with Dr. von Korff. **See** Father's Brief at 7-9. Father does not further elaborate on how the court abused its discretion or the effect that the assessment had on the final decision.

Notably, the trial court **did** recognize that Father had participated in the evaluation, and the assessment was admitted into evidence at the permanency hearing. **See** Trial Court Opinion, 7/19/18, at 10; N.T., 5/23/18, at 10, 12. The trial court referenced the assessment in making its disposition. The trial court noted that Dr. von Korff's opinion was that Father would require, at a minimum, attachment-oriented counseling, but that Father's expressed lack of interest in attending further classes, his dismissive attitude

towards attachment generally, and his disbelief that he had an issue with attachment, would render such counseling ineffective. *See id*. Again, because this finding was supported by competent evidence of record, we cannot find that the trial court abused its discretion. *N.A.*, 116 A.3d at 1148.

Third, Father argues that the trial court committed an abuse of discretion and/or error of law by failing to acknowledge that he followed the rules and regulations of his adult probation. *See* Father's Brief at 7-9.

The trial court stated:

> Neither [CYF], nor the [c]ourt, had a problem with [Father's] cooperation with probation. The Agency noted that there were no known violations of probation by [Father]. The court did not view the cooperation with probation as crucial to the determination as to whether M.C.-P.'s [p]ermanency [p]lan needed to be changed to [a]doption. Any error in failing to specifically acknowledge fulfillment of probationary rules by [Father] would be minimal error at best, not affecting the review of this [c]ourt's decision.

Trial Court Opinion, 7/19/18, at 11 (citations to the record omitted). While the court must consider the extent of the progress made toward alleviating the circumstances which necessitated the original placement, 42 Pa.C.S.A. § 6351(f)(3), Father's compliance with probation was only one factor in the court's decision. Accordingly, because we do not find that the court abused its discretion in not specifically acknowledging Father's compliance with probation, Father's claim does not merit relief. *N.A.*, 116 A.3d at 1148.

Finally, Father claims that the court committed an abuse of discretion in finding that he did not have stable housing. *See* Father's Brief at 7-9. He notes that the CYF caseworker visited his home and the conditions were

"okay," although the caseworker was concerned that Father had not provided a verified lease agreement. *Id.* at 5. Father claimed the landlord was mailing a copy of the lease. *Id.*

With regard to this issue, the trial court explained:

A review of the testimony demonstrates that [Father] has mischaracterized and embellished the status of his housing. Prior to May, 2018 [Father] and [Mother] were living with a couple with children with a history with [CYF]. When told that living situation did not qualify as stable housing, [Father] remained there. [Father] told [CYF] in April, 2018 that he was getting an apartment, and on May 4, 2018 notified [CYF] of a new address. As of the May 23, 2018 hearing, a signed lease confirming residence had not been provided. The parents claimed that they would be receiving a lease, and it was in the mail.

Trial Court Opinion, 7/19/18, at 11. The trial court found Father's testimony regarding the mailed lease not credible, noting that it defied logic to rent an apartment without signing a lease, and in the event there was a lease, obtaining a copy should have been a priority for Father. *Id.* Again, these conclusions were based upon the competent evidence of record. *N.A.*, 116 A.3d at 1148.

Based on the foregoing, we find no error of law or abuse of discretion in the trial court's finding that Father failed to make appropriate progress in alleviating the circumstances necessitating Child's placement; finding that it was in the best interests of Child to be adopted; and changing Child's permanency goal to adoption. *N.A.*, 116 A.3d at 1148; *A.N.P.*, 155 A.3d at 67; *K.C.*, 903 A.2d at 14-15. Thus, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/16/2018