J-S19003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.N.R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.M., MOTHER | : : : : : : : | |
| | : | No. 2963 EDA 2018 |

Appeal from the Decree Entered September 19, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0001257-2017

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 30, 2019**

K.M. (Mother) appeals from the trial court's decree involuntarily terminating her parental rights to her minor daughter, D.N.R. (Child) (born 10/2007).  After review, we affirm.

On the evening of December 9, 2016, police officers responded to a 9-1-1 call reporting a rape in progress at Mother's residence.  Mother called 9-1-1 after she heard Child crying and observed Child in the basement of the family home naked from the waist down, bent over, with Father standing behind Child fully clothed.  Father immediately told Mother that he was spanking Child.  When Mother asked Child what had happened, Child told Mother that "[h]e stuck his thing inside of me."  N.T. Hearing, 4/26/18, at 18. Within minutes of police arriving at the residence, Mother changed her story and told the officers that Father had just spanked Child and that Child had previously filed fabricated sexual assault allegations against a fellow school

_____

*   Retired Senior Judge assigned to the Superior Court.

student. *Id.* Officers then witnessed Child, in her second-floor bedroom, curled up in the fetal position, rocking back and forth with her head in her lap. Child told an officer, "My dad raped me. My insides hurt." *Id.* at 22-23. Child was 9-years-old at the time of the incident. Father was immediately arrested.

That evening, police took Child to the Children's Hospital of Philadelphia (CHOP) to be evaluated by the Child Protection Team (Team). Doctor Kate Henry, a fellow at CHOP and member of the CHOP Team, testified that she spoke to Mother over the phone following the incident and that Mother told the doctor:

> [T]hat evening something was burning in the oven that prompted [Mother] to go downstairs and she had noted that [Child's] father and [Child] were not in their bedrooms and so that prompted her to go downstairs. And then [Mother] went into the basement and saw [Child] with her pants down and inquired about what was going on. And went upstairs and ended up calling the police. [Mother] had stated that she started to hit [F]ather and wanted him to leave the home. And in the course of this, told [Child], if you're lying, I'm going to kill you. You tell me the truth.

N.T. 7/13/18, at 19. Mother then told Dr. Henry that Child changed her initial story, and she told Mother that Father had been spanking her. Mother also told Dr. Henry that she was aware of two prior incidents of sexual allegations that Child made against Father in the prior four years.

On January 4, 2017, the court adjudicated Child dependent and fully committed her to the Philadelphia Department of Human Services' (DHS) custody. Mother was ordered to: stay away from Child; engage in domestic violence and employment counseling; obtain a mental health evaluation; visit

- 2 -

the Achieving Reunification Center for appropriate services; undergo a dual-diagnosis assessment; have a drug/alcohol screen and three random drug screens conducted; complete a parenting capacity evaluation; attend a sexual abuse parenting support group; and provide a copy of her residential lease to the Community Umbrella Agency (CUA).

On December 29, 2017, DHS filed petitions to terminate Mother's parental rights to Child and change the goal to adoption. The court held hearings on the matters on April 26, 2018,[1] July 13, 2018, and September 19, 2018.[2] Michelle Kline, a lead forensic interview specialist at the Philadelphia Children's Alliance (PCA), testified that she interviewed Mother and Child on the evening of the incident. Kline stated that Mother told her Child was a pathological liar and that Mother did not believe Child when she told her that Father had raped her. When Kline interviewed Child, Child told her that Father

---

[1] At the April 26, 2018 hearing the court found Father to be a perpetrator of child abuse, with aggravating circumstances, ordered no further efforts to reunify Child with Father, and terminated his parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), (10), (11) and (b). N.T. Hearing, 4/26/18, at 48. Father pled *nolo contendere* to rape of a child, incest, and involuntary deviate sexual intercourse with a child for his repeated sexual assault of Child. He has not filed an appeal contesting termination of his parental rights.

[2] At the beginning of the September 19, 2018 hearing, the court accepted the entry of appearance of new counsel, W. Fred Harrison, Jr., Esquire, for purposes of an appeal following the court's termination and child abuse decision. Concurrently, the court relieved then-acting counsel, Emily Cherniack, Esquire, from her legal obligations.

had "put his penis inside her butt and her vagina, put his penis in her mouth, made her choke on it, . . . would kiss her on her chest and on her lips and . . . showed her . . . inappropriate videos of like [sic] boys humping girls and stuff like that." *Id.* at 39-40.[3] Child also told Kline that Father started showing her inappropriate videos when she was six-years-old. *Id.* at 41. After the interviews, the PCA had concerns about Child's safety in Mother's care due to Mother's refusal to believe that Child had been sexually assaulted by Father.

Doctor Erica Williams, a forensic capacity evaluator, testified that she evaluated Mother after the incident and that Mother told her there was a possibility that Father had sexually abused Child. Doctor Williams testified that Mother had been unable to meet the needs of her children[4] for decades, had substance use and domestic violence issues, presented with mood symptoms like depression, and had no affect, emotion or intonation when discussing sensitive issues. Williams recommended that Mother receive mental health therapy and, at the court's abuse/termination hearing in July 2018, noted that the six therapy sessions Mother had attended would not accomplish what she needed to do to be able to parent Child safely, "[g]iven the complex nature of the concerns." *Id.* at 56. Doctor Williams also noted

---

[3] Child also told Kline that when Father put his penis in her butt and vagina "white stuff was dripping on the floor." N.T. Hearing, 7/13/18, at 42. Kline testified that it is uncommon for a Child to describe an event in such detail if it had not actually happened to Child. *Id.*

[4] Mother has one other child with Father and four other sons. All five children (ages 7, 12, 19, 21, and 23) were living with Mother at the time of the hearings.

- 4 -

that Mother's failure to have a psychiatric evaluation completed limited Mother's progress as well. Williams concluded that Mother "did not present with the capacity to provide safety or permanency to [Child]." *Id.* at 53. Finally, Dr. Williams opined, to a reasonable degree of certainty, that Mother lacked the capacity to parent Child. *Id.* at 57.

Arlene Elfman, Child's educational decision-maker (part of the Court Appointed Special Advocates (CASA) program) testified that Mother has been determined to be a grave threat to Child. *Id.* at 72-73. Elfman also noted that Child has no desire to visit Mother and actually "shut down" when they discussed visiting Mother. *Id.* at 73-75. Finally, Elfman testified that she did not believe Child would suffer irreparable harm if Mother's parental rights were terminated.

Elizabeth Njanga, Child's therapist, testified that Child told her she does not like Mother because Mother does not love Child and that Child gets very angry talking about Mother. *Id.* at 89. Njanga also testified that she does not believe there is any child-parent attachment between Child and Mother. *Id.* at 90.

Finally, Mother testified that she started believing Father had sexually assaulted Child in 2017 - - almost one year following the instant incident. Mother claimed that she had been in denial, herself a victim of abuse as a child, and it was not until she "started reading what was said on the paper [about the December 2016 incident]" that she began to believe what Child had been telling her about Father. *Id.* at 102. Mother indicated that she

would love to be reunited with Child, *id.* at 108, has adequate housing, but was not employed. *Id.* at 106-107.

On September 19, 2018, the trial court entered three separate orders: (1) changing the permanency goal from reunification to adoption,[5] finding Mother is a perpetrator of child abuse upon Child; (2) concluding aggravating circumstances exist regarding the abuse; and (3) involuntarily terminating Mother's parental rights to Child under 23 Pa.C.S. §§ 2511(a)(2), (5), (8) and (b) of the Adoption Act.[6]  Mother filed a timely *pro se* notice of appeal from the trial court's termination order, as well as a *pro se* Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, despite the fact that she was represented by privately-retained counsel[7] at the time she filed the appeal.[8]  *See Commonwealth v. Jette*, 23 A.3d 1032 (Pa. 2011) (emphasizing hybrid-representation is forbidden on appeal).

---

[5] Within its permanency review order, the court found child abuse as to Mother, concluding that DHS' report and amended report were changed "from indicated to founded."  Permanency Review Order 9/19/18, at 2.

[6] 23 Pa.C.S. §§ 2101-2910.

[7] As the trial court noted, Mother had court-appointed counsel for the duration of the case; however, at the September 19, 2018 hearing, Mother requested that the court end appointed counsel's representation and grant her request to proceed with privately-retained counsel.  The court complied with the request.  *See supra* n. 4.

[8] Subsequently, our Court remanded the case to the trial court for a determination as to whether counsel had abandoned Mother.  *See* Superior Court Order, 11/16/18.  Upon remand, the trial court conducted a hearing and found that private counsel had, in fact, abandoned Mother.  The court

On appeal, Mother raises the following issues for our consideration:

(1)  Whether the trial court abused its discretion, when it involuntarily terminated [M]other's parental rights under the Adoption Act, 23 Pa.C.S.A. §[§] 2511(a)(2), [](a)(5), and [](a)(8).[9]

(2)  Whether the trial court abused its discretion, when it determined that terminating [M]other's parental rights would best serve [C]hild's needs and welfare pursuant to 23 Pa.C.S.A. § 2511(b).

(3)  Whether the trial court abused its discretion, when it changed [C]hild's permanency goal to adoption.[10]

_____

appointed new counsel to file an amended Rule 1925(b) statement and complete docketing statement within 15 days. *See* Abandonment Determination Hearing, 11/30/18. On December 7, 2018, the trial court appointed current counsel, Deborah A. Fegan, Esquire, who filed an amended Rule 1925(b) statement, completed docketing statement, and appellate brief.

[9] We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.* Moreover, a party seeking termination of parental rights bears the burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists, and that termination promotes the emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b). *See In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006).

[10] Our Court's standard of review for dependency cases is broad. "However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court." *In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015). We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. *Id.* Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence. *Id.* Thus, we review this claim for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164 (Pa. 2015). .

(4) Whether the trial court abused its discretion, when it found [M]other to be a perpetrator of child abuse pursuant to 23 P[a.C.S.A.] § 6303[b.1(6)].

(5) Whether the trial court abused its discretion, when it made a finding of aggravated circumstances pursuant to 42 P[a.]C.S. [§] 6302(2).[11]

(6) Whether the trial court abused its discretion, when it failed to appoint a second child advocate to represent [C]hild's legal interest during a contested termination hearing, when the termination would result in permanently severing [C]hild's relationship from her birth family. [] *Adoption of L.B.M.*, 144 A.3d 92 (Pa. 2016); 23 Pa.C.S. [§] 2313(a).[12]

(7) Did . . . [M]other receive competent representation during the child abuse/termination hearing? Rule 1.1 – Pa. Professional Rules of Conduct.[13]

Appellant's Brief, at viii.

_____

[11] With regard to dependency cases involving child abuse, the safety of the child is paramount. *In re R.P.*, 957 A.2d 1205 (Pa Super. 2008). The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. *In re S.L.*, 2019 Pa. Super. LEXIS 25 (Pa. Super. filed January 8, 2019). We review for an abuse of discretion. *Id.*

[12] On January 15, 2019, the trial judge asked this Court to remand the matter, once again, for a hearing to determine whether there was "an administrative error centered around the appointment of a second child advocate." Letter of the Honorable Deborah L. Canty, 1/15/19, at 1. Judge Canty requested we remand the matter so that the trial court could comply with the precedent outlined in *In re: Adoption of L.B.M.*, 144 A.3d 92 (Pa. 2016). However, on January 17, 2019, our Court responded to Judge Canty's request that "no action with reference to the [trial court's] letter will be taken at this time," because the original record, including the trial court's Pa.R.A.P. 1925(a) opinion, had already been filed. Superior Court Deputy Prothonotary Letter, 1/17/19.

[13] Mother has withdrawn this issue in her appellate brief. *See* Appellant's Brief, at 16. Thus, we decline to address it.

Before we conduct a substantive analysis of Mother's issues on appeal, we must first tackle a procedural issue. Mother, although represented by counsel at the time, filed a *pro se* notice of appeal from the trial court's September 19, 2018 order. In her notice of appeal Mother states that the order she is appealing has been entered in the docket "as evidenced by the attached copy of the docket entry." *Pro Se* Notice of Appeal, 10/12/18, at 1. The order attached, however, is the decree involuntarily terminating Mother's parental rights and the docket entry reflecting this order/decree solely references the court's termination of Mother's parental rights under 23 Pa.C.S. §§ 2511 (a) and (b). There is no mention of the permanency review/goal change order or aggravated circumstances order in the notice of appeal, attached as copies to the notice, or listed in the docket entries attached to the notice of appeal.

The Official Note to Pa.R.A.P. 341 states that "[w]here . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed." Pa.R.A.P. 341, Official Note. In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our Supreme Court recently held:

> [I]n future cases [Pa.R.A.P.] 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal.

*Id.* at 977. In **In re M.P.**, 2019 PA Super 55 (Pa. Super. filed February 22, 2019), our Court applied the **Walker** holding in a termination of parental

rights/goal change appeal. In **M.P.**, Mother had filed separate notices of appeal for each of her two children; however, because Mother had "discrete challenges to the termination decree and goal change for each child" she was required to file separate notices of appeal for each docket (adoption and dependency). **Id.** at *5. Thus, our Court concluded that because Mother failed to file separate notices of appeal from the two separate dockets, "**Walker** compel[led] quashal." **Id.**

Similarly, the September 19, 2018 orders in the instant case resolved issues arising on more than one lower court docket - - dependency and adoption. Here, Mother filed a *pro se* notice of appeal listing only the adoption docket number, AP-0001257-2017, which resolved the termination matter. In her Pa.R.A.P. 1925(b) statement and appellate brief, however, Mother also raises issues relating to the finding of child abuse, aggravating circumstances, and goal change. Mother has not filed a separate notice of appeal listing the dependency docket number, DP-0002765-2016, which resolves the goal change matter.[14] Therefore, because Mother did not file separate notices of appeal from those orders arising on separate dockets, we could quash the appeal pursuant to the holdings in **Walker** and **M.P.** However, because

_____

[14] The goal change matter, however, was resolved in one of the court's September 19, 2018 orders. The separate permanency review order and aggravating circumstances orders, however, resolve Mother's issues with regard to dependency.

Mother did not have the benefit of the **M.P.** decision at the time she filed her notice of appeal, we choose not to quash the instant appeal,[15] as to do so would result in a harsh consequence.[16]

After careful review, we affirm the trial court's goal change, child abuse and aggravating circumstances orders and the decree terminating Mother's parental rights. We rely upon the trial court's Rule 1925(a) opinion authored by Judge Canty and the relevant notes of testimony elucidating her findings on the record at the parties' September 19, 2018 hearing. **See** Trial Court Opinion, 11/15/18 and N.T. Hearing, 9/19/18, at 11-22:

> **Child Abuse** (under 23 Pa.C.S. § 6303(b.1)(6) for Mother's failure to protect Child; Mother was aware of two prior incidents regarding sexually inappropriate contact between Father and Child where Father was perpetrator of the abuse; Mother, herself, indicated Child had told her on at least one and possibly two prior occasions that "Dad put his thing in me;" Mother reported that there had been allegations four to five years prior that brought Child into CYS' care; Court found "there was a reasonable likelihood of sexual abuse occurring to [Child] based on Father's previous history . . . [a]nd, that [Mother] did not do anything to

_____

[15] **M.P.** was filed on February 22, 2019, four months after Mother filed her October 12, 2018, notice of appeal.

[16] We also decide not to quash the instant appeal as it relates to the permanency docket for the alternative reason that Mother was found to have been abandoned by counsel after the termination order was entered and new counsel was not ordered to file a new notice of appeal *nunc pro tunc*, but, rather, only an amended Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

protect [Child] from Father." N.T. Hearing, 9/19/18, at 12; DHS indicated reports "founded."[17]);

**Aggravating Circumstances** (under 42 Pa.C.S. § 6302, court found Child has been victim of physical abuse resulting in serious bodily injury, sexual violence, or aggravated physical neglect by Mother; and

**Termination of Parental Rights** (under sections 2511(a)(2), (5), and (8), court found Mother does not have capacity to appropriately parent Child where Mother still does not really understand what happened between Child and Father; Mother played significant role in failing to protect Child from Father's sexual abuse; Mother waffles about whether she still believes Child; Mother did not seek much-needed mental health treatment until after termination petitions were filed; expert did not think that treatment would sufficiently assist Mother due to fact that Mother did not believe Child was sexually abused by Father; and Mother has not appropriately addressed her lack of capacity to parent Child while Child has been in agency's care); with regard to termination; and under section 2511(b), court found it was in Child's best interest to terminate Mother's parental rights where she desperately needs to be freed up for adoption after having been in placement for over two years; Child struggles with anger issues towards Mother; Child says Mother does not support her and did not believe what happened to her even though she told Mother that Father had sexually abused her; Child is very adamant that she does not want to see Mother and does not want to have any contact with Mother; Child's current therapist, CUA worker, and Child Advocate Social Worker all testified that termination would be in Child's best interests and that termination of Mother's parental rights would not irreparably harm Child; Court found that there is no positive parent/child relationship between Mother and Child and little to no bond between the two; Child calls foster mother "mom" and foster mother meets Child's everyday needs and Child is doing well in foster mother's care; based on "Child's adamant refusal to see Mo[ther]," trial court concluded that there

---

[17] A child protective services report was generated with regard to the December incident alleging Child as the victim and Mother and Father as the alleged perpetrators. DHS investigated the report and determined it to be "indicated." *Id.* at 67-68.

would be no detrimental impact on Child if Mother's rights were terminated. N.T. Hearing, 9/19/18, at 21.).

Finally, we conclude that a second child advocate was not necessary in the instant case where there is no apparent conflict between Child's legal and best interests. Child has made it very clear that she does not wish to see Mother or have any contact with her; there is no demonstrated attachment or positive bond between Mother and Child. Under such circumstances, an attorney-guardian *ad litem* representing Child's best interests can also represent Child's legal interests. **See In re: T.S., E.S.**, 192 A.3d 1980 (Pa. Super. 2018).

We instruct the parties to attach a copy of Judge Canty's opinion in the event of further proceedings in the matter.

Decree[18] affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/19

---

[18] In affirming the September 19, 2018 decree terminating Mother's parental rights, we also affirm the September 19, 2018 permanency review and aggravated circumstances orders. **See supra** n. 10.

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION- DEPENDENCY BRANCH

2018 NOV 15 AM 11: 24

IN RE: D.R., a/k/a D.N.R., a minor      :      CP-51-AP-0001257-2017
                                       :      CP-51-DP-0002765-2016
                                       :      FN-468626-2009
                                       :
                                       :      Superior Court No. 2963 EDA 2018
                                       :
APPEAL OF: K.M., mother[1]             : 

Trial Court's Notice of Compliance with Rule of Appellate Procedure 1925(a) [2]

Pursuant to Rule of Appellate Procedure 1925(a), the trial court hereby gives notice that it stated

on the record the reasons for its entry of the Order that is the subject of this Appeal. Testimony and the

evidentiary record expand across three hearing dates: April 26, 2018, July 13, 2018 and lastly, September

19, 2018 and as such, three transcripts are attached, identified as Court's Exhibits A-C, corresponding to

each hearing date. (N.T. 04/26/2018, pgs. 1-88 (Court's Exhibit A)); (N.T. 07/13/2018, pgs. 1-138

(Court's Exhibit B)); and (N.T. 09/19/2018 pgs. 1-35 (Court's Exhibit C[3])). The trial court addressed a

finding of child abuse, a finding of aggravated circumstances and the determination to terminate parental

---

[1] Father's parental rights as to this child were involuntarily terminated on April 26, 2018, however, father has not filed an appeal. Thus all references to father have been excluded from this Statement.

[2] The trial court's opinion was not filed on November 13, 2018 when it was originally due because on October 30, 2018, the Superior Court ordered Mother's attorney of record, Mr. Fred W. Harrison, to file an amended Concise Statement of Matters Complained in accordance with Pa. R.A.P. 1925 (b) within ten days of the Court's order, which was due by November 9, 2018. However, Attorney Harrison did not file an amended 1925(b) statement as ordered by the Superior Court by November 9, 2018.

[3] Pursuant to the trial court's Order, dated November 9, 2018, the permanency portion of the September 19, 2018 transcript has been sealed for the protection of the child; however, the Superior Court's transcript has not been redacted.

1

rights and change the goal to adoption. (N.T. 09/19/2018, pgs. 1-21 and p. 22 at 1 (Court's Exhibit C)). The trial court's primary statements regarding the sole appellant, K.M., ("Mother"), appear in the third and final transcript, Court's Exhibit C, just *after* a brief overview of the testimony elicited during the two previous hearings and just *before* the Permanency segment of the final hearing, which occurred at close of the September 19, 2018 hearing. (Id.). Imperative to each determination were the relevant exhibits regarding each issue litigated: child abuse, aggravated circumstances, termination of parental rights and the goal change to adoption, all of which are attached hereto as "DHS Exhibits 1-15"[4], "Child Advocate Exhibits 1-3" and "Mother's Exhibit 1". (N.T. 4/26/2018, p. 78 at 16-25 (Court's Exhibit A)); and (N.T. 07/13/2018, p. 30 at 22, p. 41 at 22-23, and p. 49 at 11-12, p. 64 at 18, p. 65 at 22-23, p. 96 at 24-25 and p. 106 at 19-20 (Court's Exhibit B)).

In finding that Mother is a perpetrator of child abuse, the trial court applied the facts to the relevant law and detailed the reasons that Mother was found to be a perpetrator of child abuse. (N.T. 09/19/2018 p. 11 at 1-5 and p. 11 at 9-25, p. 12 and p. 13 at 1-10 (Court's Exhibit C)). Specifically, the trial court asserted the applicable law and recounted the testimony from multiple witnesses at each hearing including Mother's own admission of having prior knowledge of previous abuse thereby creating a reasonable likelihood that such abuse would or could occur in the future. (Id.).

In finding that aggravated circumstances existed as to Mother, the trial court applied the facts to the relevant law and detailed the reasons that aggravated circumstances were found against Mother as to the subject child, D.R. aka D.N.R. (N.T. 09/19/2018 p. 11 at 5-7 and p. 13 at 11-21 (Court's Exhibit C)). Specifically, the trial court asserted the applicable sections of the law and plainly applied the facts of this

---

[4] DHS Exhibits 6, 7 and 9 are not included in the trial court's submission of documents to the Superior Court because DHS did not ask the trial court to admit DHS Exhibits 6, 7 and 9 into evidence.

case to demonstrate how the trial court arrived at the determination that aggravated circumstances exist as to Mother. (N.T. 09/19/2018 p. 11 at 5-7 and p. 13 at 8-24 (Court's Exhibit C)).

In making the determination to terminate Mother's parental rights, the trial court applied the facts to the law and detailed the reasons that Mother's rights were terminated. (N.T. 09/19/2018, p. 11 at 7-8, p. 13 at 24-25, pgs. 14-21 and p. 22 at 1 (Court's Exhibit C)). Furthermore, the trial court addressed the determination that it is in the best interest of the Child for a Goal Change to Adoption. (N.T. 09/19/2018, pgs. 19-21 and p. 22 at 1 (Court's Exhibit C)).

In addition, the trial court would like to address mother's Concise Statement of Matters Complained, which mother filed October 12, 2018 without the assistance of her privately retained attorney[5]. Mother's pro-se filing did not assert a concise statement of matters complained of in accordance with Pa. R.A.P. 1925(b). Furthermore, Mother's pro-se filing was only filed on the AP Docket and thus appears to only challenge the trial court's decision to change the goal to adoption. Nonetheless, the trial court has broadly interpreted Mother's pro se filing as challenging the trial court's determinations on both the Dependent Docket and on the AP Docket. Specifically the trial court has interpreted Mother's pro se filing to challenge the trial court's finding of child abuse as to her, the finding of aggravated circumstances against her, and involuntarily terminating her parental rights and changing the goal to adoption. For the reasons previously set forth, the trial court found that the Department of Human Services not only met its burden by clear and convincing evidence to establish child abuse and aggravated circumstances against Mother, it also met its burden by clear and convincing evidence sufficient to terminate Mother's parental rights and to change the goal to adoption.

---

[5] At the final hearing on September 19, 2018, Mother fired her court-appointed attorney, Emily Cherniack, and appeared to the hearing with a privately retained attorney, Mr. Fred W. Harrison, Jr., who remains counsel of record. Extensive discussions occurred at the beginning of the hearing on September 19, 2018 regarding the change in counsel. (N.T. 9/19/2018 pgs. 4-6 (Court's Exhibit C)).

3

The trial court has also interpreted Mother's pro se filing to allege Ineffective Assistance of Counsel as to her *now* vacated court-appointed attorney, Ms. Cherniack. In response to this statement, the trial court addressed on record during the September 19, 2018 hearing that Ms. Cherniack provided adequate representation for Mother. (N.T. 9/19/2018 pgs. 4-5 and p. 6 at 1-23. (Court's Exhibit C)). Additionally, the trial court is adamant that it will not usurp an attorney's trial strategy.

Lastly, Mother's pro se filing appears to allege unfair treatment or judicial or systemic biased. The trial court was not provided with sufficient information in Mother's pro se filing to address this issue. Accordingly, the trial court cannot effectively, nor sufficiently, address this matter.

To the extent that the PA Superior Court believes that the trial court's statements on the record do not adequately address any issue on appeal, the trial court will submit a supplemental opinion upon remand.

BY THE COURT:

DEBORAH L. CANTY, JUDGE

Date: November 15, 2018

4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following parties, as set forth below:

**Family Court Mailboxes**

BARRY KASSEL, ESQUIRE
SUPPORT CENTER FOR CHILD ADVOCATES
1617 JFK Boulevard, Suite 1200
Philadelphia, PA 19103
Child Advocate and Guardian Ad Litem

SHARON WALLIS, ESQUIRE
640 Rodman Street
Philadelphia, PA 19147
Counsel for Father

ROBERT AVERSA, ESQUIRE
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
Counsel for DHS

**USPS Mail**

FRED W. HARRISON, JR., ESQUIRE
3701 Conshohocken Avenue, SUITE NOT PROVIDED
Philadelphia, PA 19131
Counsel for the Appellant, Mother, K.M.


11/15/18
Date

Deborah L. Canty, Judge

5