J-S21017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.L.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: V.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 111 EDA 2019 |

Appeal from the Decree Entered December 13, 2018
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000922-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: K.L.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: V.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 112 EDA 2019 |

Appeal from the Decree Entered December 13, 2018
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001726-2017

BEFORE:  STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                           **FILED MAY 14, 2019**

V.B. (Mother) appeals from the decree involuntarily terminating her parental rights to her minor child, K.L.B. (Child) (born October 2006), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and changing the permanency goal for Child to adoption pursuant to the

Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  Additionally, Mother's counsel, Harry Levin, Esquire, seeks to withdraw his representation of Mother pursuant to *Anders v. California*, 87 S. Ct. 1936 (1967), *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), and *In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending *Anders* briefing criteria to appeals by indigent parents represented by court-appointed counsel in involuntary termination matters). After careful review, we affirm and grant counsel's petition to withdraw.

We adopt and summarize the trial court's recitation of the facts, which is supported by the record.  *See* Trial Court Opinion, 2/15/19, at 2-3. Procedurally, we note in October 2015, the Philadelphia Department of Human Services (DHS) received a general protective services (GPS) report, later substantiated, which alleged that Mother was suffering from depression and addicted to drugs, and that Child was truant from school.  DHS implemented services for Mother.  Regardless, by May 2017, Child had accumulated 78 school absences.  In June 2017, Community Umbrella Agency (CUA) social workers met with Mother regarding Child's truancy, but Mother could not explain or justify Child's absences.

DHS filed a dependency petition, and on July 13, 2017, Child was adjudicated dependent.  Child was removed from Mother's care and placed with S.B. (Maternal Grandmother).  CUA identified single case plan (SCP) objectives for Mother, namely that Mother:  1) participate in employment and

---

[1] That same day, the court terminated the parental rights of M.F. (Father); Father has not appealed the termination of his parental rights.

financial planning classes at Achieving Reunification Center (ARC); 2) attend parenting classes at ARC; 3) provide three random drug screens to the Clinical Evaluation Unit (CEU); and 4) comply with dual diagnosis assessment recommendations from the Behavioral Health Services (BHS) unit. However, Mother failed to comply with these objectives, and on January 29, 2018, ARC changed her status to "inactive."

On November 19, 2018, DHS filed a petition to terminate Mother's parental rights. The court convened a hearing on the petition and DHS' accompanying goal change petition on December 13, 2018. Mother, represented by counsel, was not present at the hearing; Mother's counsel stipulated to the facts presented in DHS' petition. Child was represented by Jeff Bruch, guardian *ad litem*, and Athena Dooley, a child advocate/legal counsel.[2] Attorney Dooley noted on the record that she spoke with Child on December 1, 2018, and Child's preference was to be adopted by Maternal Grandmother. **See** N.T., 12/13/18, at 28. Additionally, DHS presented the testimony of the CUA social worker, Mary Mucheri. Ms. Mucheri opined that termination of Mother's parental rights was in Child's best interests. **Id.** at 24.

At the conclusion of the hearing, the court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and

---

[2] Accordingly, Child's statutory right to counsel in a contested involuntary termination proceeding was satisfied. **See**, **e.g.**, **In re Adoption of L.B.M.**, 161 A.3d 172, 180 (Pa. 2017) (plurality).

changed Child's permanency goal to adoption. Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In this Court, counsel has filed an **Anders** brief.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court committed reversible error, when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(a)(1)[, (2), (5), and (8)?]

2. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving primary consideration to the effect that termination would have on the developmental, physical, and emotional needs of the child as required by the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(b)[?]

3. Whether the trial court erred because the evidence was overwhelming and undisputed that [M]other demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her child.

**Anders** Brief at 6.

When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under **Anders**, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago**, namely:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, only then may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Attorney Levin's *Anders* brief complies with the above requirements. He includes a summary of the relevant factual and procedural history; he refers to the portions of the record that could arguably support Mother's claim; and he sets forth his conclusion that the appeal is frivolous and no other non-frivolous issues could be raised. Additionally, Attorney Levin has supplied Mother with a copy of the *Anders* brief and a letter explaining the rights

enumerated in *Nischan*, *supra*. Thus, counsel has complied with the technical requirements for withdrawal, and we therefore proceed to independently review the record to determine if the issues raised are frivolous, and to ascertain whether there are non-frivolous issues Mother may pursue on appeal.

We review cases involving the termination of parental rights according to the following:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations omitted).

Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, we focus our analysis on subsections (a)(2) and (b). The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

***

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

***

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied."

*See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

Mother argues that she is capable of providing Child with essential parental care and that the causes of her incapacity have been remedied. *Anders* Brief at 15. In her third issue, which corresponds to this argument, Mother avers that there was overwhelming evidence that she demonstrated a genuine, sincere, and persistent effort to maintain a parent-child relationship with Child.[3] *Id.* at 14-17.

Upon review of the record, we find no support for Mother's argument. DHS presented evidence that Mother's parenting incapacity had not been remedied. Ms. Mucheri testified that Child has been living with Maternal Grandmother since July 2017. *See* N.T., 12/13/18, at 11-12. Maternal Grandmother ensures that Child's physical and medical needs are met, and that Child attends weekly therapy. *Id.* at 13. Ms. Mucheri testified that

_____

[3] We note that due to its underdevelopment, Mother risks waiver of her third issue. *See*, *e.g.*, *S.M.C. v. W.P.C.*, 44 A.3d 1181, 1189 (Pa. Super. 2012); *see also Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011) (noting that where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived); *see also Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant."); *see also* Pa.R.A.P. 2119(a). However, because counsel has filed an *Anders* brief, we decline to find waiver.

Mother had not completed her SCP objectives. *Id.* Specifically, Mother did not attend BHS for any appointments. *Id.* at 14. Mother appeared for one drug screen in January 2018, but failed to participate in three other random screens. *Id.* at 14-15. Mother attended ARC once, for intake, but after her failure to attend parenting classes, her case was marked inactive. *Id.* at 16. Mother visited Child only sporadically; the last visit Ms. Mucheri supervised was in January 2018, and the last visit Mother had with Child was July 2018. *Id.* at 16-17. Mother did not communicate with CUA. *Id.* at 17. In sum, the evidence showed that Mother had minimal involvement with her service plan objectives as well as minimal contact with Child.

Consistent with the foregoing, we discern no error in the trial court's finding that competent, clear and convincing evidence supported the termination of Mother's parental rights pursuant to Section 2511(a)(2), based upon Mother's continued incapacity – namely, her inability to complete a single SCP objective or remain in contact with Child – that resulted in Child being without essential parental care, the cause of which "cannot or will not be remedied." *See Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Next, we consider the trial court's finding that Child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use

expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Instantly, Mother contends that Child would be "best off" with Mother and that Mother is best suited to provide for the developmental, physical, and emotional needs and welfare of Child. *Anders* Brief at 15. Mother claims that

she has a bond with Child, and it would be detrimental to Child's welfare to terminate that bond. *Id.* at 16.

Again, the record does not support Mother's argument. Ms. Mucheri testified that Child understood the concept of adoption and was happy with the prospect of being adopted by Maternal Grandmother. *See* N.T., 12/13/18, at 21-23. Child is bonded with Maternal Grandmother, who meets her needs. *Id.* at 23-24. In the care of Maternal Grandmother, Child has perfect attendance in school and makes good grades. *Id.* at 26-27. No evidence was presented regarding any bond between Mother and Child; in fact, at the time of the termination hearing, there had been no contact between Mother and Child for at least five months. *Id.* at 16-17. The trial court, at the conclusion of the hearing, found that no bond existed between Mother and Child. *Id.* at 22.

We discern no abuse of discretion in the trial court's conclusion that Child's needs and welfare are best served by termination. Accordingly, clear and convincing evidence supports the trial court's termination of Mother's parental rights under Section 2511(a)(2), as well as the court's Section 2511(b) finding that adoption would best serve Child's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763.

Finally, we note that Mother filed two notices of appeal, one from the adoption docket and one from the dependency docket. It does not appear that the appeal from the dependency docket contains the order changing Child's permanency goal to adoption; rather, attached is the decree of the

involuntary termination of Mother's parental rights. The concise statement of errors complained of on appeal, filed at both dockets, mentions only the involuntary termination. *See* Pa.R.A.P. 1925(b) Statement, 12/31/18, at 1-2. The *Anders* brief likewise mentions only the termination in the statement of issues raised. *Anders* Brief at 6. While Mother vaguely discusses the permanency goal change in the argument section of her brief, she does not cite to relevant authority; she cites one single, general case regarding permanency goal changes, while the rest of the cited cases concern involuntary termination. *Id.* at 12-17. Thus, Mother risks waiver of any challenge to Child's goal change. *See Krebs v. United Ref. Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver).

However, because Mother's counsel filed an *Anders* brief, we nevertheless examine the record to determine whether the goal change issue has merit. As noted, Mother's argument is underdeveloped, although she generally asserts that the goal change to adoption was not in Child's best interests. *Anders* Brief at 12-13.

With regard to dependency:

[t]he standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule

upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015). Thus, we employ an abuse of discretion standard. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

Regarding the disposition of dependent children, the Juvenile Act, 42 Pa.C.S. §§ 6351(e)-(g), provides the criteria for a permanency plan. The court must determine a disposition best suited to the safety and protection, as well as the physical, mental, and moral welfare of the child. *See* 42 Pa.C.S. § 6351(g). With a goal change petition, the trial court:

> considers the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In Interest of A.N.P.*, 155 A.3d 55, 67 (Pa. Super. 2017) (quoting *In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

As discussed above, placement was warranted because Mother did not remedy the circumstances that led to Child's original placement. Mother had not complied with any of her service plan goals; Mother had made no progress towards alleviating the concerns of DHA because she had not participated in the services. For example, Mother did not complete random drug screens, did not attend the BHS unit for evaluation, and was excluded from ARC due to her lack of involvement. Accordingly, the court did not err in changing Child's placement goal to adoption. *A.N.P.*, 155 A.3d at 67.

In sum, we agree with Attorney Levin that Mother's issues are frivolous. We have independently reviewed the record and find no other non-frivolous issues of arguable merit that counsel or Mother could pursue on appeal. We thus grant counsel's petition to withdraw.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/19