J-S18002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: C.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.J.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1991 MDA 2019 |

Appeal from the Decree Entered November 18, 2019,
in the Court of Common Pleas of Cumberland County,
Orphans' Court at No(s):  056-ADOPT-2018,
CP-21-DP-0000085-2017.

| | | |
|---|---|---|
| IN THE INTEREST OF: C.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.J.B., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2016 MDA 2019 |

Appeal from the Order Entered November 26, 2019,
in the Court of Common Pleas of Cumberland County,
Juvenile Division at No(s):  CP-21-DP-0000085-2017.

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.:          **FILED SEPTEMBER 03, 2020**

In this consolidated matter, M.J.B. (Father) appeals from the decree involuntarily terminating his parental rights to his three-year-old daughter,

_____

* Former Justice specially assigned to the Superior Court.

C.B. (Child), pursuant to the Adoption Act.[1] *See* 23 Pa.C.S.A. § 2511(a)(1), (2) and (b). Father also appeals the court's decision to change the goal of the child's dependency case from reunification to adoption, pursuant to the Juvenile Act. *See* 42 Pa.C.S.A. § 6351(f). Father's counsel has filed a petition to withdraw brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). Upon review, we grant counsel's petition to withdraw and affirm the trial court's decree and order.

We provide the following background. Child was born in November 2015. Father lived intermittently with Child and Mother until Mother obtained a protection from abuse (PFA) order against him in March 2017. In June 2017, Mother notified the Cumberland County Children and Youth Services Agency (CYS) that she could not care for Child while undergoing long-term in-patient substance abuse rehabilitation to treat her addiction to cocaine. Child was subsequently placed in kinship care with the maternal great-grandmother under the terms of a safety plan, because Father could not be located. In July 2017, the maternal great-grandmother informed the agency that she could no longer care for Child, prompting CYS to file a dependency petition.

The juvenile court adjudicated Child dependent in August 2017; Mother was still undergoing drug rehabilitation, and CYS discovered Father was incarcerated. The court placed Child in the home of foster parents (K.F.1. and

_____

[1] We note that Child was nearly four years old at the time of the termination hearing. We note further that the court terminated the rights of A.K., (Mother), in October 2018.

K.F.2.). Father, who struggled with a methamphetamine addiction, learned of Child's placement in December 2017, and began communicating with the foster parents. When Father was released on probation in May 2018, CYS developed a family service plan to aid with the reunification between him and Child.

Father made significant progress on his family service plan objections, including maintaining his sobriety, employment, and visitation with Child. Nevertheless, in October 2018, CYS petitioned the court for involuntary termination of the parents' rights. The court terminated Mother's rights, but denied the petition against Father. By March 2019, Father made so much progress that the court discharged Child from the foster parents' care, where Child had been for over 19 months, and placed Child in Father's legal and physical custody. The court still kept the dependency case open, however.

In May 2019, Father relapsed. Although Father notified his probation officer and voluntarily entered an in-patient rehabilitation program, he did not notify either CYS or the court. Instead, he left Child in the care of his paramour (now spouse) and her parents. At the July 2019 permanency hearing, Father averred that he had remained clean and sober since completing the rehabilitation program. The court ordered Father to immediately submit to a drug screen. The preliminary results indicated the presence of amphetamine and methamphetamine in Father's system, which Father denied using. Notwithstanding the results, the court allowed Child to remain in Father's custody under the supervision of his paramour's parents

while the preliminary results were confirmed. When the results were confirmed, the court removed Child from Father's care and placed her back with the foster parents.

In August 2019, CYS petitioned the court to change the goal of the dependency case from reunification to adoption, and in September 2019, CYS petitioned for the termination of Father's rights. On November 15, 2019, the court convened evidentiary hearings to consider these petitions. The court granted the petitions. Father timely filed notices of appeal from Child's respective dockets, along with separate concise statements of errors complained of on appeal. Father's counsel later filed a petition to withdraw and an *Anders* brief.

We begin by addressing the petition to withdraw and *Anders* brief. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw"). This Court extended the *Anders* procedure to appeals from decrees terminating parental rights involuntarily in *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to *Anders*, counsel must comply with the following requirements:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to

retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009)). Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights. ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for ***Anders*** briefs.

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

In the instant matter, counsel has substantially complied with these requirements. We may proceed to review the issues outlined in counsel's brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super.

2015) (footnote omitted); *see also Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

Counsel raises the following issues, which we reorder for ease of disposition:

> 1. Did the trial court abuse its discretion and commit an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of appellant's parental rights in his child, and when it failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus contravening [23 Pa.C.S.A. § 2511(a) and (b)]?
>
> 2. Did the trial court abuse its discretion and commit an error of law when it found, despite a lack of clear and convincing evidence, that the child's permanent placement goal of reunification was neither appropriate, nor feasible and ordered a goal change to adoption, thus contravening [42 Pa.C.S.A. § 6351(f)].

*Anders* Brief at 4

We review these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

In this case, the court terminated Father's parental rights pursuant to subsections 2511(a)(1), (2), and (b). Those subsections provide:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> > [...]

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) ... or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

Instantly, we observe that the argument section of counsel's brief tracks the discussion section of the trial court's Rule 1925 opinion insofar as it addresses subsections 2511(a)(1) and (2) contemporaneously. ***See Anders*** Brief at 16, n. 7. Father explains that subsection 2511(a)(1) did not warrant discussion because the court "did not expressly rely on [sub]section 2511(a)(1) as a legal basis for terminating [his] parental rights." ***See id.*** We understand Father's contention, given the apparent evidence that Father ***did*** perform parental duties within the statutory timeframe outlined in subsection 2511(a)(1), and the trial court's omission of a separate analysis on this point. We certainly do not find Father waived this issue. Nevertheless, we need only agree with the court as to any one subsection of 2511(a), as well as subsection 2511(b) in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Thus, we analyze the court's decision to terminate under subsection 2511(a)(2) and (b).

We begin with subsection 2511(a)(2). Regarding this subsection, we have previously stated the following:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.,* 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re B.J.Z.*, 207 A.3d 914, 922-923 (Pa. Super. 2019) (citation omitted).

Father seems to limit his contention to the second element, namely, that his relapse did not cause the child to be without essential care, as he ensured Child was safe with his paramour and her family. *See Anders* Brief at 15. In doing so, Father evidently reasons that his drug addiction did not constitute a "repeated" or "continued incapacity" to parent, as demonstrated by his previously ability to achieve sobriety, to complete his family service plan, and to reunify with Child. According to Father, the court unfairly nullified Father's achievements when Father relapsed.

Like the trial court, we are sympathetic to Father's struggles with addiction. The question still remains: has Father demonstrated a repeated or

- 9 -

continued incapacity, which caused Child to be without parental care, and whether Father possessed the ability to remedy this incapacity?

In our review, each element of subsection 2511(a)(2) had been met. Father has struggled with addiction since the inception of this case. It is, of course, all the more tragic that Father obtained reunification only to relapse soon after. It is worth noting, however, that the record supports the court's finding that Father relapsed more than once. He admitted to using in May 2019, and notwithstanding his adamant denial that he used again, he appeared under the influence during the July 2019 permanency review hearing and tested positive. Therefore, Father relapsed at least twice in four months – the only four months he exercised physical custody since Child was adjudicated dependent nearly two years prior. And when Father relapsed, someone had to care for Child, not only while he used, but also while he detoxed. As Mother's rights were previously terminated, Father was the only parent left. That Father ensured Child had adequate supervision did not mean she had parental care.[2] Finally, Father cites a variety of secondary sources for the proposition that relapse is an anticipated part of the addict's recovery process. That may be so, but this lends all the more credence to the trial court's determination that Father's incapacity is repeated and continuous.

---

[2] Although not directly relevant to the instant analysis, we note that Father was not exactly forthright about his relapse. While we find laudable Father's honesty with his probation officer, as well as his decision to enter detox, we are mindful that Father chose not to make either CYS or the trial court aware of his relapse, despite Child's dependency case still being open. Thus, we are at least partially skeptical of Father's portrayal that he behaved with the utmost responsibility in the time immediately after his relapse.

Underlying Father's argument is the unspoken assumption that his most recent relapse was his last, that his incapacity has been remedied. But when considering the entire case history, not just the summer months in 2019, the court determined that Father cannot remedy this incapacity. In sum, the trial court properly determined CYS satisfied each element of subsection 2511(a)(2).

Having concluded that termination was warranted under subsection 2511(a)(2), we address whether termination best served Child's needs and welfare under subsection 2511(b). Regarding this portion of the analysis, we have previously stated:

> [Subs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

- 11 -

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

Parental rights may be terminated notwithstanding the existence of a parent-child bond. When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy a "necessary and beneficial relationship," thereby causing a child to suffer "extreme emotional consequences." *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1992).

In the instant case, Father argues that CYS did not meet its burden because even the court acknowledged his "deep and abiding love" for Child. *Anders* Brief at 17. Father misconstrues this portion of the termination analysis. "A parent's own feelings of love and affect for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted). As we stated above, this inquiry concerns the needs and welfare of the child. *See C.M.K.*, *supra.*

In this respect, we observe the trial court's findings:

> [Child] is four years old. She has spent four months of her life in [Father's] care, during which time [Father] relapsed twice. [Child] lived with her foster parents from July 2017 when she was under two years old through March 2019 and again in August through [the termination hearing in November]. Her foster parents, "Mommy and Daddy" to [Child], love her and intend to adopt her. The attorney for the child [...], and the guardian *ad litem* [...] concurred that [Child's] home is with her foster parents and she "belongs' there. We agree with such recommendations, in consideration of the stability and love the foster family has for [Child], evident to all, the bond they share, the length of

time [Child] has spent outside of [Father's] care, and the extended period of Agency involvement for [the nearly] four-year-old [Child].

We reiterate our awareness of the difficulties of addiction. Our concern, however, lies with [Child] and her stability, permanency, safety, and needs for uninterrupted love. This [c]ourt heard the testimony of counselors, the case worker, the foster mother, and others, and considered input from the [guardian *ad litem*] and the arguments of counsel, including the attorney for the child, and we find that termination of parental rights is in [Child's] best interests. [Child] cannot be in [Father's] care during or surrounding the periods of his relapses, and [Child] cannot wait for another demonstrated period of sobriety and continue to languish in confusion and uncertainty. We lament, as we said to [Father] at the hearing, that he did not succeed in his sobriety efforts to be stable for [Child.] We encouraged him to continue on the path towards sobriety so that he may be a part of [Child's] life, as the foster parents seem open to do. The Agency has proven, by clear and convincing evidence, that it is in the best interests of the child to terminate [Father's] parental rights pursuant to 23 Pa.C.S.A. § 2511(b).

Trial Court Opinion (T.C.O.), 1/14/20, at 13-14 (citations to the record omitted).

Upon our review, we confirm that the trial court's findings and conclusions were supported by the record. To the extent that Father has a bond with Child, it is not of the sort that precludes termination; we share the trial court's reluctance to expose Child to an indefinite impermanency and instability while Father continues to address his addiction.

By virtue of our decision to affirm the court's termination decree, Father's goal change claim is moot. ***See Interest of D.R.-W.***, --- A.3d ---, 2020 PA Super 15 at * 9 (Pa. Super. January 29, 2020) ("An issue before a

- 13 -

court is moot if in ruling upon the issue the court cannot enter an order that has any legal force of effect") (citation omitted). Even accepting for the sake of argument that the claim is not moot, we would conclude Father is not entitled to relief.

We review goal-change orders pursuant to an abuse-of-discretion standard:

> [t]he standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015).

Regarding the disposition of dependent children, the Juvenile Act, 42 Pa.C.S.A. §§ 6351(e)-(g), provides the criteria for a permanency plan. The court must determine a disposition best suited to the safety and protection, as well as the physical, mental, and moral welfare of the child. *See* 42 Pa.C.S.A. § 6351(g). With a goal change petition, the trial court considers:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In Interest of A.N.P.*, 155 A.3f 55, 66 (Pa. Super. 2017) (citations omitted).

- 14 -

We have further noted:

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citations omitted).

Additionally, 42 Pa.C.S.A. § 6351(f)(9) provides, among several other factors that the court considers at a permanency hearing:

> If the child has been in placement for 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made ...

*See* 42 Pa.C.S.A. § 6351(f)(9).

The Pennsylvania Supreme Court has reiterated that

> (f)(9) is merely one of a number of factors a trial court must consider in ultimately determining whether the current placement is appropriate or if and when another placement would be appropriate based upon the trial court's assessment of what is "best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S.A. § 6351(f)(9).

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

A trial court is not required to itemize its findings, so long as it considers the various factors of Section 6351(f), concludes that reunification is not the appropriate placement goal, and provides reasons for its conclusion that are supported by the record. *Id.*

In this case, Father argues that the court did not give any weight to the fact that he previously achieved the goals in his family service plan and reunified with Child. *Anders* Brief at 12-13; *see also* 42 Pa.C.S.A. § 6351(f)(2), (3). In reaching its decision, the court made essentially the same determinations as discussed above: Father's relapses, undisclosed to the court, in close proximity to the reunification, and after Child was without parental care for an extended period. *See* T.C.O. at 16.

In fact, Child was placed outside of Father's care for approximately 21 months prior to reunification. Father then had custody of Child for approximately two months prior to his first relapse, and then for two more months prior to his second, at which point Child was removed from Father's care. At the time of the goal change hearing, Child had been in placed outside of Father's care for approximately 25 of the preceding 29 months. Although Father had made tremendous progress during the life of the case, the parties were right back where they started, over two years ago, with Father using and Child without parental care or permanency. At this point, it was impossible for the trial court to discern when Father could demonstrate prolonged sobriety so as to allow for Child's safe return. The court did not error for concluding that Child could not wait any longer.

In conclusion, we share the trial court's sympathy for Father's struggle with addiction, and we echo the court's hope that the foster parents choose to incorporate Father in Child's life, if and when Father obtains sobriety. Although he is unsuccessful in this appeal, we cast no aspersions on his ability to achieve success in his future recovery. For now, however, we conclude that the trial court did not abuse its discretion when it terminated Father's rights and changed the goal to adoption. Upon our review of the record, we find no other potentially non-frivolous issues. We grant counsel's request to withdraw.

Decree affirmed. Order affirmed. Petition to withdraw granted.

Judge King joins the memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/03/2020